# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| SYRITA CLERK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:16-CV-1552 CAS |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Syrita Clerk ("plaintiff") for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"). Plaintiff filed a brief in support of the Complaint, the Commissioner filed a brief in support of the Answer, and plaintiff filed a reply brief. For the following reasons, the decision of the Commissioner is affirmed, and plaintiff's Complaint is dismissed.

## I. PROCEDURAL HISTORY

Plaintiff filed her application for DIB on April 10, 2013, alleging disability beginning February 27, 2012. (Tr. 133). Plaintiff's application was initially denied on August 16, 2013, and she filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 14). Plaintiff appeared and testified at the hearing. After a hearing, by decision dated September 21, 2015, the ALJ found plaintiff not disabled (Tr. 30). On September 13, 2016, the Appeals Council issued a decision denying plaintiff's request for review (Tr. 1-4). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that plaintiff has not engaged in substantial gainful activity since February 27, 2012, the alleged onset date. (Tr. 22). The ALJ found that plaintiff has the following medically determinable impairments: depression, anxiety, and post-traumatic stress disorder, but that no impairment or combination of impairments meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526) (Tr. 23). The ALJ determined that plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> she is limited [to] routine, repetitive tasks. She is limited to occasional to frequent interaction with the public. The claimant is limited to occasional interaction with co-workers but with no tandem tasks and occasional interaction with supervisors. She should avoid moderate exposure to loud noises.

(Tr. 24-5). The ALJ found that plaintiff is unable to perform any past relevant work, but there are jobs that exist in significant numbers in the national economy plaintiff can perform including bench assembler (DOT 706.684-042) and laundry worker (DOT 302.684-010).[1] (Tr. 29-30). Thus, the ALJ concluded plaintiff has not been under a disability, as defined in the Social Security Act, from February 27, 2012, through the date of the decision, September 21, 2015. (Tr. 30).

## III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting

---

[1]DOT is the Dictionary of Occupational Titles, which is published by the U.S. Department of Labor.

Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities . . . ." Id. "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001), citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner

has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Steed, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. Cox, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Masterson v. Barnhart, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022.

4

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

## IV.  DISCUSSION

In her appeal of the Commissioner's decision, plaintiff argues the ALJ erred at step five, and there is no substantial evidence in the record that plaintiff can perform a significant number of jobs in the national economy because: (1) the ALJ misinterpreted the vocational expert's testimony; and (2) the ALJ failed to scrutinize the factual basis for the vocational expert's opinion.  For the following reasons, the Court finds that plaintiff's arguments are without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

**A.    There is Reliable Vocational Evidence in the Record.**

Plaintiff argues that in step five the ALJ failed to rely upon reliable, vocational evidence regarding the number of available jobs plaintiff could perform.  According to plaintiff, the ALJ cited to numbers that the vocational expert (VE) provided in his responses to interrogatories, but these

5

were not the number of jobs available for the two DOT job titles the VE determined plaintiff could perform, but rather the number of jobs available in the broader categories in which these two DOT job titles fall.

To support a finding at step five that a claimant is not disabled there must be "evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [her] residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2). Work exists within the national economy "when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant is] able to meet." 20 C.F.R. § 404.1566(b). Testimony from a VE based upon a properly phrased hypothetical question constitutes substantial evidence supporting the ALJ's decision. Milam v. Colvin, 794 F.3d 978, 985–86 (8th Cir. 2015). The Commissioner can develop vocational expert testimony through written interrogatories. See, e.g., Coffin v. Sullivan, 895 F.2d 1206, 1212 (8th Cir. 1990) (written interrogatories to a vocational expert satisfied due process because plaintiff had an opportunity to pose further questions or to request cross-examination). In step five the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Steed, 524 F.3d at 874 n.3.

In this case, a VE did not testify at the administrative hearing, instead the ALJ obtained the VE's testimony through written interrogatories. The VE, Dale Thomas, was asked to assume the following hypothetical individual:

> [an] individual who was born on March 3, 1985, with at least a high school education and is able to communicate in English as defined in 20 C.F.R. 404.1564 and 4163.964, and [with plaintiff's work experience]. Assume further that this individual has the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following nonexertional limitations:

- Routine repetitive tasks,
- Occasional to no interaction with public;
- Occasional interaction with co-workers but no tandem tasks;
- Occasional interaction with supervisors;
- Avoid moderate exposure to loud noises.

(Tr. 252). The VE was asked whether this hypothetical individual could "perform any unskilled occupations with jobs that exist in the national economy?" (Tr. 253). If yes, the VE was asked to "provide the DOT Title, Code and SVP[2] time as well as the number of jobs that exist in the national economy for each unskilled occupation that the individual could perform." Id. The VE provided the following response:

*Production Workers*      *108,000 jobs*
   *e.g., Bench Assemblers*      *706.684-042   L/2*
*Maids & House Cleaners*      *306,000 jobs*
   *e.g., Laundry Worker*      *302.684-010   L/2*

(Tr. 253). The ALJ asked the VE: "Are there any conflicts between the occupational evidence you have provided for Question #10 and the occupational information contained in the DOT and/or SCO?"[3] The VE replied, "no." (Tr. 254).

The VE's responses to the written interrogatories were entered into the administrative record, and plaintiff was given the opportunity to object or respond to the new evidence. She was also given the opportunity to submit written questions to the VE or to request a hearing to question the VE. The ALJ informed plaintiff, "If I do not receive a response from you within 10 days of the date you receive this notice, I will assume that you do not wish to submit any written statements or records

---

[2] SVP is defined as Specific Vocational Preparation.

[3] The SCO, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, is a companion publication for the DOT and is also published by the U.S. Department of Labor.

7

and that you do not wish to request a supplemental hearing or to orally question the author(s) of the new evidence." (Tr. 256). Plaintiff did not respond to the notice of new evidence.

The ALJ took the VE responses to interrogatories into account in her decision. In evaluating step five, the ALJ wrote:

> In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11).[4] When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decision-making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical Vocational Guidelines provides a framework for decision making. (SSR 85-15).
>
> The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. To determine the extent to which these limitations erode the occupational base of unskilled work at all exertional levels, the undersigned asked the vocational expert whether jobs exists in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that, given all of these factors, the individual would be able to perform the requirements of the representative occupations such as:

| JOB TITLE | DOT # | EXERTIONAL LEVEL | SVP | NATIONAL ECONOMY |
|---|---|---|---|---|
| Bench assembler | 706.684-042 | Light | 2 | 108,000 |
| Laundry worker | 301.684-010 | Light | 2 | 306,000 |

---

[4]SRR refers to Social Security Rulings, which are published by the Social Security Administration under the authority of the Commissioner.

> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.
>
> Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines.

(Tr. 29-30).

Plaintiff argues that the ALJ's findings in step five are not based on substantial evidence because the ALJ misinterpreted the VE's interrogatory responses. According to plaintiff, the VE did not provide the number of jobs for bench assembler or laundry worker, but rather he provided the number of jobs available for the broader groups of production workers and maids and house cleaners. Plaintiff asserts there is no reliable data from the Department of Labor for the number of jobs within an individual DOT code. Bench assembler, DOT code 706.684-042, falls within OES Group 51-9199, Production Workers, All Other ("Production Workers"), which is comprised of 1,526 distinct DOT-code jobs.[5] Doc. 17 at 5. According to plaintiff, bench assembler is but one of the 1,526 jobs within the group Production Workers, which total 241,910, and the number of bench assembler jobs would be a fraction of the total of Production Worker jobs in the national economy. Plaintiff argues that considering her limitations, she cannot perform all the jobs with the Production Workers group because, for example, some require more skills or more physical demands.

---

[5]OES is the Occupational Employment Statistics program from the Department of Labor.

9

Likewise, laundry worker, DOT code 301.684-010, falls within a larger OES group, Maids and House Cleaners, which according to plaintiff is comprised of nine DOT codes.[6] Id. at 6. Laundry worker is but one of these jobs. Plaintiff further argues that considering her limitations, she could not perform all of the jobs within the OES group, Maids and House Cleaners. In sum, plaintiff argues there is no evidence in the record as to how many bench assembler or laundry worker positions there are in the national economy and, therefore, there is no evidence that could support the ALJ's finding that the number is significant.

The Commissioner argues that the ALJ's decision in step five is supported by substantial evidence, which the VE provided. According to the Commissioner, the VE found that with plaintiff's RFC and vocational profile, plaintiff could perform some production worker jobs, such as bench assembler, and some maid and house cleaner jobs, such as laundry worker. The Commissioner contends that the VE identified 108,000 production worker jobs and 306,000 maid and house cleaner jobs within the national economy that were consistent with plaintiff's RFC, and he indicated that these jobs were "L/2" jobs, meaning light jobs with SVP levels of 2. (Tr. 253). According to the Commissioner, bench assembler and laundry worker are merely examples of jobs within the broader categories of Production Workers and Maids and House Cleaners that are light with SVP levels of 2, and which plaintiff could perform.

The Commissioner concedes the ALJ appears to have overstated the number of jobs available for bench assembler and laundry worker, but she argues this "deficiency in opinion writing" is immaterial because the VE made clear that the job figures referred to groups of jobs within the

---

[6] Plaintiff attached to her Brief in Support of Complaint the "Detailed Job Specialty Report" for Laundry Worker, Domestic, DOT 302.684-010. Doc. 17, Ex. 2. Within this report, it states laundry workers falls within OES statistical group 37-2012 - Maids and Housekeeping Cleaners, for which there are nine unique DOT codes, and 865,960 jobs in the national economy. Id.

10

broader two categories, not just the two representative occupations. Doc. 22 at 6. The Commissioner states that the VE "included the notation 'L/2' to denote that his figures included light positions with SVP levels of 2," not just the two job titles. Id. at 7. Plaintiff, on the other hand, argues that in making her determination the ALJ relied on these figures, which represent the total number of jobs within the broader categories of Production Workers and Maid and House Cleaners, and include jobs that exceed plaintiff's limitations.

The Court does not find plaintiff's argument to be persuasive. The evidence in the record does not support the premise of plaintiff's argument – that the VE provided information regarding the number of jobs in the broader categories of Production Workers and Made House Cleaners, and failed to provide any figures regarding the number of jobs plaintiff could perform considering her work experience and limitations.

First, the VE was not asked to provide information regarding the broader categories, rather he was to "provide the DOT Title, Code and SVP time as well as the number of jobs that exist in the national economy for each unskilled occupation that the individual could perform." (Tr. 253). An ALJ can "properly assume that the expert framed his answers based on the factors the ALJ told him to take into account." Whitehouse v. Sullivan, 949 F.2d 1005, 1006 (8th Cir. 1991).

Second, the figures the VE did give do not match the number of jobs in the national economy for the broader categories. For example, he wrote "108,000 jobs" next to Production Workers, but there are more than twice that number for the national economy. And he wrote "306,000 jobs" next to Maids and House Cleaners, and there are over 850,000 of these jobs in the national economy. (Tr. 253). Plaintiff attempts to explain the discrepancies by stating "[v]ocational experts may have good reason to cite a lower figure than what is provided by the Bureau of Labor, which includes part-time

11

positions and positions that are certainly not considered by the ALJ, such are those with narrow geographic availability." Doc. 17 at 10, n.2. However, there is nothing in the record to suggest that this is what the VE did.

The Court agrees with the Commissioner that in answering the ALJ's interrogatory, the VE provided the number of jobs plaintiff could perform in each of the two categories, considering her limitations. It is apparent from the record it was the VE's opinion that in the national economy there are 108,000 light positions with a SVP level of 2 that plaintiff could perform under the Production Workers category, and an example of one of these positions is bench assembler, DOT 706.684-042. Likewise, there are 306,000 jobs that plaintiff could perform in the national economy that are light positions with a SVP level of 2 in the Maids and House Cleaners category, and an example of one of these positions is laundry worker, DOT 301.684-010. While plaintiff argues there are a wide variety of DOT codes within the broader categories of Production Workers and Maids and House Cleaners that plaintiff could not perform because they are highly skilled or more physically demanding, the VE did not include these jobs in his figures, as he noted that the jobs he was including were "L/2," in other words, light positions with SVP levels of 2. (Tr. 253).

The Court finds that the case at bar is nearly identical to Boyd v. Colvin, 831 F.3d 1015 (8th Cir. 2016). In Boyd, the VE also testified through written interrogatories. The VE found that the plaintiff could perform unskilled, sedentary assembly jobs and unskilled, sedentary inspecting jobs. Id. at 1019. The VE identified two jobs as examples, fishing reel assembler and table worker, and provided figures for the total number of jobs available. "He stated that there are 500 jobs available in the state, 15,000 to 16,000 jobs available in the region and 150,000 to 155,000 jobs available in the national economy in the assembly category, and 15,000 to 16,000 jobs available in the region

12

and 200,000 jobs available in the national economy in the inspecting category." Id. at 1021–22. As in the case at bar, the ALJ adopted the examples the VE had given "as encompassing the entirety of the job numbers." Id. at 1022. In seeking judicial review of the denial of benefits, the plaintiff in Boyd argued that the ALJ erred in accepting the testimony of the VE because the VE "improperly testified as to the number of jobs available to [the plaintiff] based upon an entire group or category of jobs, rather than giving the numbers of individual sedentary jobs." Id. at 1021. The Eighth Circuit rejected the plaintiff's argument, finding that the VE had given fishing reel assembler and table worker as examples, and "clearly confirmed that all of the job numbers to which he referred were unskilled sedentary jobs—jobs which comply with the hypothetical RFC provided by the ALJ." Id. at 1022. The Eighth Circuit also found it was of no import that, like here, the ALJ had misidentified the two examples as comprising the entirety of the VE job numbers, "as the VE's testimony as presented constitutes substantial evidence to support the ALJ's finding at step five of the sequential evaluation process." Id. (citing Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011)).

This Court finds the present case is on all fours with Boyd, and concludes there is substantial evidence in the record to support the ALJ's decision that there are other jobs in the national economy plaintiff can perform considering her vocational history and limitations.

**B. The ALJ Was Not Required to Scrutinize the Factual Basis for the VE's Testimony.**

Plaintiff also argues that the ALJ erred because she depended on evidence from the VE that lacked a reliable basis. Citing to Welsh v. Colvin, 765 F.3d 926 (8th Cir. 2014), and Social Security Ruling (SSR) 00–4p, 2000 WL 1898704 at *2 (December 4, 2000), plaintiff maintains that when a VE has testified to information beyond the scope of the DOT or SCO, an ALJ must articulate findings regarding whether the VE's explanation was reasonable, and the ALJ must provide a basis

13

for relying on the testimony. In making this argument, plaintiff points to the fact that some of her limitations regarding mental functioning and interaction with others are not addressed by the DOT. She also notes that the SCO describes noise levels of jobs as "moderate" and "loud," while the hypothetical given to the VE stated she must "[a]void moderate exposure to loud noises." (Tr. 252). Plaintiff argues because some of the limiting factors in the hypothetical are not included in the DOT or SCO, the VE's opinion must have been based on information beyond the scope of the DOT or SCO and, therefore, the ALJ was required to examine the VE regarding the basis for his opinions, which the ALJ did not do.

SSR 00-4p provides that a VE's occupational evidence should be generally consistent with the occupational information supplied by the DOT, and "when there is an apparent unresolved conflict between the VE . . . and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE." Welsh, 765 F.3d at 929. The Eighth Circuit has construed SSR 00-4p "as placing on the ALJ an affirmative responsibility to ask about 'any possible conflict' between VE evidence and the DOT, and to obtain an explanation for any such conflict, before relying on VE evidence to support a determination the claimant is not disabled." Id. (citing Kemp v. Colvin, 743 F.3d 630, 633 (8th Cir. 2014)). "When an ALJ has posed a hypothetical that accurately reflects his RFC finding, questioned the VE about any apparent inconsistencies with the relevant DOT job descriptions, and explained his decision to credit the VE's testimony, the ALJ has complied with SSR 00–4p, and we review his decision under the deferential substantial evidence standard." Id. at 930 (citing Jones v. Astrue, 619 F.3d 963, 978 (8th Cir. 2010)).

In this case, plaintiff does not maintain that there was an apparent conflict between the VE's testimony and the DOT and/or SCO, but rather that the VE must have relied on information beyond

14

the scope of the DOT and/or SCO. Plaintiff is arguing that an ALJ has a duty to scrutinize the VE's factual basis for his findings not only when there is an apparent conflict between the VE testimony and the DOT and/or SCO, but also when the DOT and/or SCO is silent as to issues about which the VE testified.

The Eighth Circuit has recently addressed this issue and explicitly rejected plaintiff's argument. In a decision from this summer, the Eighth Circuit wrote:

> Social Security Ruling (SSR) 00-4p makes clear that before relying on VE evidence, adjudicators must "[i]dentify and obtain a reasonable explanation for any <u>conflicts</u> between" such evidence and the DOT. 2000 WL 1898704, at *1 (Dec. 4, 2000) (emphasis added). SSR 00-4p emphasizes that an adjudicator must resolve "apparent unresolved <u>conflict[s]</u>" between VE evidence and the DOT. <u>Id.</u> at *2 (emphasis added). But it does not impose a duty on the ALJ to obtain a reasonable explanation when the VE simply testifies to information not found in the DOT—but that does not conflict with it.

<u>Courtney v. Comm'r, Soc. Sec. Admin.</u>, 894 F.3d 1000, 1002 (8th Cir. 2018). "[U]nless a VE's testimony appears to conflict with the DOT, there is no requirement that an ALJ inquire as to the precise basis for the expert's testimony regarding extra-DOT information." <u>Id.</u> at 1004.

Here, it is undisputed that the ALJ described plaintiff's limitations to the VE, the VE responded with possible jobs plaintiff could perform, and there is no apparent conflict between the VE's responses and the DOT and/or SCO. Accordingly, the ALJ was "entitled" to rely on the testimony of the VE without further scrutinizing his testimony. <u>Id.</u> at 1005 (citing <u>Moore v. Astrue</u>, 623 F.3d 599, 604 (8th Cir. 2010)). <u>See also</u> <u>Gieseke v. Colvin</u>, 770 F.3d 1186, 1189 (8th Cir. 2014) (affirming the ALJ's reliance on the VE's testimony and finding no conflict when the plaintiff had a limitation that affected his ability to perform every job within a generic range and the VE reduced his estimate of the number of existing jobs the claimant could perform); <u>compare</u> <u>Kemp ex rel. Kemp v. Colvin</u>, 743 F.3d 630, 633 (8th Cir. 2014) (finding no substantial evidence to support step

15

five because "the record does not reflect whether the VE or the ALJ even recognized the possible conflict between the hypothetical describing a claimant who could reach overhead only occasionally, and DOT job listing [ ] indicating that a check-weigher job involved constant reaching.").

The Court concludes the ALJ was not required to further scrutinize the VE's testimony because there was no conflict between the testimony and the DOT or SCO, and there is substantial evidence to support the ALJ's finding that there is other work that exists in significant numbers in the national economy that plaintiff could perform.

### V.  CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and plaintiff's Complaint is **DISMISSED with prejudice**.

A judgment will accompany this Memorandum and Order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  25th  day of September, 2018.